SOUTH PARK COMMISSIONERS *v.* KERR and others.

*(Circuit Court, N. D. Illinois. 1882.)*

1. EQUITY—TRUST—MONEY FOLLOWED INTO LAND.
    Where land is purchased with money advanced by a bank on the faith of an agreement between a board of commissioners and one of the defendants, and in pursuance of such agreement and subject to the conditions thereof the land is conveyed to a trustee, and said board have refunded the money so advanced, *such agreement never having been actually consummated,* the money can be followed into the land; but if the conveyance of the land would work an inury

to the defendant, with whom the agreement was made, he should be allowed to refund the money, with interest, and all the parties be placed *in statu quo* as nearly as possible.

2. PRACTICE—EQUITY—VARIANCE—AMENDMENT.

Where the facts proved as entitling a party to relief do not correspond with the allegations of the bill, no relief can be granted unless the bill is properly remodeled.

DRUMMOND, C. J. This is a bill filed by the South Park Commissioners to obtain the title at the time held by Frederick A. Ingals in an undivided one-fourth part of the south fractional half of section 13, township 38, range 14, E. which it is claimed the said Ingals held in trust for them. The circumstances under which this claim is made are substantially as follows:

In October, 1878, a decree was rendered in this court terminating a litigation between Kerr and the commissioners, by which the latter were required to pay the value of certain parts of the land in controversy to Kerr, to be ascertained in the manner stated in the decree. An appeal was taken from that decree, and while the appeal was pending in the supreme court of the United States, negotiations for a settlement of the controversy were opened between Kerr, through his agent, and some of the South Park Commissioners. The result was that in May, 1879, a contract was entered into by Kerr and the agent of some of the commissioners by which it was agreed that the price of the land should not exceed a fixed sum; and certain moneys were to be advanced to Kerr, who was to purchase up any outstanding titles which might exist; and the contract contained various other provisions which need not here be stated. It was agreed that it should not be binding on the commissioners until it was adopted by the board in regular session. In fact, it never was adopted by the board, and therefore never became an operative contract between Kerr and the commissioners; but in consequence of this proposed contract various acts were done and moneys paid which have given rise to the controversy in this case.

At that time George Schneider, president of the National Bank of Illinois, was the treasurer of the South Park commission, and as such had a large balance in his hands on deposit in that bank. It was proposed to lay this contract before the board of commissioners at a future time for its adoption. Before that was done, and, as it would appear, in part execution of the arrangement which had been made between Kerr and some members of the board already mentioned, application was made to the National Bank of Illinois to obtain funds for Kerr, and some members of the board went to the

bank and stated the arrangement proposed, and that a settlement of the litigation would probably be made and ratified by the commissioners, and requested the bank to advance to Kerr the sum of $60,-000. In 1872 Kerr had sold the undivided one-fourth of the premises in controversy to Mrs. Dobbins for a considerable sum of money paid at the time, and for two notes of $25,000 each, given by her husband and secured upon the property. At the time this loan was made by the bank these notes were turned over as collateral security, together with two other notes given by W. H. Nixon and L. Curry, of $30,325 and $30,225, respectively. Under these circumstances, in May, 1879, the money was advanced by the bank; but it should be added that it was done solely on the representations made by some of the South Park Commissioners, and upon their assurance that it was substantially a transaction for the benefit of the commission. The money otherwise would not have been advanced by the bank upon the notes which were given by Nixon and Curry, or upon the Dobbins notes. On the twelfth of November, 1879, the title of Mrs. Dobbins to the land in controversy was purchased by Kerr and a deed made to Ingals, and on the fourteenth of November, 1879, the bank advanced $21,000, under substantially the same assurances and circumstances as in the former case. In the latter, Mr. Bennett gave his note for the money advanced, and the bank advanced the money for the same reason as it had made the previous advances. Kerr, in the mean time, had purchased what were claimed to be some outstanding titles upon the property. On the twenty-first of November, 1879, at a regular meeting of the South Park Commissioners, at which all were present, the proposed contract heretofore mentioned was presented to the board. Objection was made, at least by one member of the board, and it was laid over for future consideration. After the advances were made by the National Bank of Illinois, application had been made to some members of the board that the money advanced by the bank should be refunded; and, accordingly, on the twenty-first of November a resolution was passed by the board apparently having that object in view. It was as follows:

"Resolved, that the president of this board is hereby authorized to make such settlement and adjustment of the litigation regarding the south half of fractional section 13, 38, 14, and such purchase of the title thereto, as, in his judgment, may be advisable, and for that purpose to draw from the treasurer of the commission a sum not exceeding the sum of $90,000 before reporting the same to this board, and that the auditor is hereby instructed to sign the necessary warrants for said sum of money, or so much thereof as is called for."

On the twenty-fourth of November, 1879, a warrant was issued for $82,800, payable to the National Bank of Illinois, and delivered to the bank on that day; and the Curry, Nixon, Dobbins, and Bennett notes, and a declaration of trust which Mr. Ingals had made, were delivered to Mr. Morgan, the president of the commission. On the twenty-sixth day of February, 1880, a second warrant for $7,200 was drawn, payable to Mr. Morgan's order, which was indorsed to the agent of Kerr, and upon which he received the money, a note having been signed by Mr. Curry for that amount and delivered to Mr. Morgan, together with a declaration of trust by Mr. Ingals. In April, 1880, Mr. Morgan turned over all these papers and securities to the secretary of the commission, who gave a receipt therefor.

It is proper to say that upon some question being made as to the condition upon which Mr. Ingals held the property, he stated in court that he had no interest of his own, but was a simple trustee, and willing to convey the property as the court might direct, notwithstanding the fact that in some of the different declarations of trust which he had given he may have stated that his conveyance was to be subject to certain contingencies; and, in fact, he has since conveyed the property to Mr. Doolittle as trustee, who has been made a party.

There is more or less difference in the testimony of the witnesses as to the number of the South Park Commissioners who individually agreed to the contract of May, 1879, but as it is admitted it was made on the condition that it was only to be binding when ratified by the board, and that it was never so ratified, this difference is, perhaps, not material.

In June, 1879, a judgment was rendered against Mrs. Dobbins in favor of Kerr on her covenant, for the payment of the two notes of $25,000 each. A motion was immediately made to set aside the judgment, which motion is still pending. Kerr has stipulated that in consideration of full payment of the two notes the judgment shall be set aside and the suit dismissed. Mr. Ingals, the trustee, in his answer claims that he owns the Dobbins title to secure the payment of the $21,000, and the $7,200 heretofore mentioned, and that he is only to convey the premises to the plaintiff upon the consummation of the contract previously referred to, of May, 1879. The testimony shows that some of the commissioners, perhaps a majority, adopted the resolution of November 21, 1879, with a view of carrying out the contract of May, 1879, and if it were not adopted by the board that the money paid to Kerr should stand as a credit upon the

amount that might be ultimately allowed for the land that was to be appropriated by the South Park Commissioners; but that some of the commissioners understood that whatever payment was made, was made for the purchase of the Dobbins title. When this title was conveyed, which is now held by Doolittle, the consideration was the $21,000 already mentioned, together with the discharge of the two notes of $25,000 each, which are now held by the South Park Commissioners under the circumstances referred to.

The difficulty in this case consists in the fact that the money was paid on different assumptions made by the different persons, no one of which was justified by the ultimate circumstances. Some of the commissioners assumed that the money was to be and was paid upon the condition that the contract of May, 1879, would be carried into effect, not upon the basis that the Dobbins or any other portion of the title was to be purchased; while others assume that the money was to be and was paid upon the basis that the Dobbins title was to be purchased. There can be no doubt that the agent of Kerr acted throughout upon the assumption that the entire south fractional half of section 13 constituted the subject-matter of the contract of May, 1879, and that it was to be carried into effect. The question is, what are the equities of the parties, because neither view turned out to be correct. In point of fact, all the money was advanced by the bank, except the $7,200, which was paid directly to Kerr's agent. The loan of May, 1879, made by the bank, was in the form technically of a discount of the notes and securities that were then deposited, and the sum actually received by Kerr was less than $60,000, the discount being deducted from that amount. The fact, then, is that up to November 21, 1879, when the resolution of the board was passed, which has already been cited, no money had actually been paid by the South Park Commissioners as a corporation, the bank having paid all the money. It was not a case, therefore, where the money was paid by the commissioners, and a deed taken in the name of Ingals. It is true that it was through the influence of some members of the board of South Park Commissioners that the National Bank of Illinois advanced the money; but it was the money of the bank, and not of the board, that was thus paid. As already said, the $7,200 was paid directly by the warrant of the board to Kerr's agent. Kerr never agreed that this money or any other should be paid in order to procure for the board the interest of Dobbins and his wife, viz., an undivided fourth of the land. If the South Park Commissioners are entitled to this land, it is only in consequence of the state of facts

which have been established, and because of the advance of the money by the National Bank of Illinois in the manner stated, and its repayment to the bank by the board; the money of the board thus being given to Kerr, and the two notes of $25,000 each being transferred over by Mr. Morgan, as already stated, to the secretary of the board, and the $21,000 being so soon reimbursed by the board after its payment by the bank. It would seem, therefore, to be a case where the money can be followed into the property which is now held by a trustee rather than because a trust actually existed, as where money is paid by one person and the land has been transferred to another, that the board would be entitled to hold the property.

I think that the facts of the case show that the board of South Park Commissioners is entitled to follow this money into the land, inasmuch as it was transferred to Ingals under the circumstances already stated, and his grantee now holds it in trust, and, strictly speaking, in equity he ought to be adjudged to hold it subject to the rights of the board of commissioners; but not absolutely, because if they can be placed in the position they were before the money was advanced, Kerr is entitled to any equity which may exist in consequence of that being done. For, as has already been stated, he did not agree that this money should be advanced, and the property held by Ingals for the benefit of the South Park Commissioners, except *sub modo*, namely, subject to the conditions of the contract of May, 1879, to which contract the board of South Park Commissioners as a corporation was never a party; and therefore it seems to me that it is the duty of the court, if a decree requiring Mr. Doolittle to convey the property to the board of South Park Commissioners would do any injustice to Mr. Kerr, as it might, to give him the privilege of placing the board *in statu quo* by refunding the money, with interest. I am inclined to think, as the board holds the Dobbins notes, that they should be paid in full before the plaintiff should be clothed with the absolute title to the property; and as there does not seem to have been enough money advanced to make that payment, with the interest on the notes, in addition to the $21,000 which would constitute the consideration for the transfer of the Dobbins title, whatever deficiency there is ought to be made up by the board before Ingals is required to convey his title to the plaintiff.

These I consider to be the equities of the parties under the facts which are established in the case, and in which the argument of counsel has been made: but it is not possible for the court to render

a decree in favor of the plaintiffs upon the bill which has been filed. The proof and the allegations of the bill do not correspond. The facts alleged in the bill, and upon which the court must make a decree if the pleadings should stand, are different from those established by the proof. For example, it is stated in the bill that Mr. Morgan received this money as the agent of the board; that he disbursed it, and in consequence of his receipt and disbursement of the money the equity of the plaintiffs exists. In point of fact, he never received any money. He merely transferred by indorsement a warrant for the $7,200 to the agent of Kerr, who himself received the money, and Mr. Morgan never touched any portion of the rest of the money, as the evidence clearly shows. In any event, therefore, before the court could give the plaintiffs the benefit of the equity to which it is entitled, there would have to be an entire remodeling of the bill.

The bill was afterwards amended, and a decree rendered in conformity with the opinion here expressed.